2010-01291
FILED
December 13, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003136310

1  JUSTIN T. RYAN (SBN 261672)
   LAW OFFICES OF JUSTIN T. RYAN
2  2534 State Street, Suite 409
   San Diego, California 92101
3  Telephone No.: (619) 822-2533
   Facsimile No.: (619) 923-2543
4

5  Attorney for Plaintiff
   HERITAGE PACIFIC FINANCIAL LLC.
6

7

8              **UNITED STATES BANKRUPTCY COURT**
               **EASTERN DISTRICT OF CALIFORNIA**
9              **FRESNO DIVISIONAL OFFICE**

10 In Re:                           )  Chapter 7
                                    )  Bankruptcy No. : 1:10-bk-60931
11 RICK JAMES WILSON                )  Adversary Case No.:
                                    )
12                                  )
          Debtor.                   )
13                                  )
   _____)
14 HERITAGE PACIFIC FINANCIAL, LLC. )  **PLAINTIFF'S COMPLAINT TO**
   D/B/A HERITAGE PACIFIC FINANCIAL, a )  **DETERMINE DISCHARGEABILITY OF**
15 Texas Limited Liability Company, )  **DEBT**
                                    )
16                                  )  **[11 U.S.C. §523(a)(2)(A); 11 U.S.C.**
          Plaintiff,                )  **§523(a)(2)(B)]**
17        vs.                       )
                                    )
18 RICK JAMES WILSON                )  DATE: See Summons
                                    )
19                                  )
          Defendant.                )
20                                  )
                                    )
21                                  )
                                    )
22                                  )
   _____)
23

24            <u>**COMPLAINT TO DETERMINE THE**</u>
              <u>**DISCHARGEABILITY OF DEBT AND FOR JUDGMENT**</u>
25

26        Plaintiff, through its attorney, Justin T. Ryan, of Law Offices of Justin T. Ryan, states as

27 follows:

28

_____

         PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

                                  - 1 -

## PARTIES AND JURISDICTION

1. This is an adversary proceeding in bankruptcy brought by Heritage Pacific Financial, LLC. dba Heritage Pacific Financial pursuant to 11 U.S.C. § 523.

2. Defendant filed a Chapter 7 bankruptcy petition on September 22, 2010. Jurisdiction is

vested in this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. §1334, and 11 U.S.C. § 523; this matter is a core proceeding.

4. Plaintiff is a creditor of defendant. Plaintiff is the assignee and current owner and/or holder of Defendant's loan and related mortgage note.

## GENERAL ALLEGATIONS

5. Plaintiff is informed and believes, and thereon alleges that in an effort to obtain funds to purchase and/or refinance a property, Defendant completed, or caused to have completed on his behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein.

6. Defendant obtained loans evidenced by promissory notes executed by Defendant. Plaintiff is the true and current owner and holder of Defendant's loan and related promissory note. A true and correct copy of the Note is attached as **Exhibit "B"** and incorporated by reference herein.

7. Defendant certified the accuracy of the information contained in the Loan Application and expressly consented to the verification and re-verification of the information contained therein.

8. Among other information required to be certified, and in fact certified, by Defendant on the Loan Application, was information regarding Defendant's current employer, gross monthly income, and intent to use the property securing the loan as Defendant's primary residence.

9. Defendant knew that his then-current income was insufficient to obtain the loans,

and in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant provided, prepared, or caused to be prepared, a Loan Application which materially misstated Defendant's employment, income and/or intended use of the property as a primary residence; and caused Defendant's agent to submit to the lender a materially false Loan Application and other materially false documents related thereto.

10.    Plaintiff is informed, believes, and thereon alleges that Defendant directed, instructed, and caused to have his materially false Loan Application and supporting documentation transmitted to Defendant's lender knowing that the information in the Loan Application and supporting documentation was materially false.

11.    The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in and in conjunction with the Loan Application was false.  In reliance on the information and documentation provided by Defendant, the lender approved Defendant's Loan Application.

12.    Defendant executed a promissory note in favor of the lender, pursuant to which Defendant agreed and promised to repay the loan according to the terms of the promissory note. The proceeds of the loan, as stated in the promissory note, were to be used to purchase and/or refinance the property securing the promissory note.

13.    The lender fully performed, including by disbursing the loan proceeds to Defendant.  The lender and/or its assignees duly assigned Defendant's loan and promissory note to Plaintiff, who is currently the owner and holder of Defendant's loan and promissory note.

14.    Defendant defaulted on his payment obligations and obligation to re-verify the information contained in the Loan Application despite the Plaintiff's request therefore.

15.    Plaintiff is informed, believes, and thereon alleges that in applying for the loan, the Defendant knowingly misstated her monthly income on his Loan Application and concealed his true income.  Plaintiff is further informed and believes that the Defendant knowingly misstated the status of his employment on the Loan Application and concealed his true employment status. Plaintiff is further informed and believes that Defendant misrepresented his residency such that the

property securing the loan was not Defendant's primary residence, and concealed his true residency status.

16.     The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

17.     Plaintiff is not barred from pursuing this action by any anti-deficiency statute or rule. Plaintiff does not seek a deficiency judgment for the balance of a promissory note following foreclosure, but rather seeks a judgment for Defendant's fraud in connection with their loan application, as alleged herein. Plaintiff has attempted to resolve this matter prior to filing this complaint by contacting Defendant.

## FIRST CLAIM FOR RELIEF

### False Pretenses, False Representation or Actual Fraud

### [11 U.S.C. § 523(a)(2)(A)]

18.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 17, above.

19.     In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein.  Defendant utilized this loan, creating a balance due and owing on this loan of $74,813.70 including interest as of the date the bankruptcy petitioner was filed.

20.     Defendant obtained the money by false pretenses, a false representation and actual fraud by misrepresenting that the money obtained for the purpose of purchasing a property for his primary residence. Defendant misrepresented her intended use of the property as his primary residence as the property was being purchased for another individual.

21.     The lender did not know, and had no reason to know, that defendant misrepresented his intended use of the property and in reliance on the information approved the loan.

22.     At the time of obtaining the money from the lender execution of the loan, Defendant failed to disclose to Lender that he did not and would not use the property as his primary residence. Lender justifiably relied on Defendant's representation and paid money for the purchase of a primary residence.

23.     By reason of the foregoing, Defendant obtained money from the lender through false pretenses, false representations and actual fraud. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for the lender to rely on the misrepresentation.

24.     Lender reasonably relied upon Defendant's misrepresentations and was induced to lend money to Defendant by those misrepresentations.

25.     Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

26.     As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $74,813.70 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(A), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $74,813.70 plus interest and reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

### Use of False Statement in Writing

### [11 U.S.C. § 523(a)(2)(B)]

27.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25, above.

28.     In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed.

A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein. Defendant utilized this loan, creating a balance due and owing on this loan of $74,813.70 including interest as of the date the bankruptcy petitioner was filed.

29.     In an effort to obtain the funds, Defendant caused to have completed on his behalf, a Uniform Residential Loan Application, otherwise known as a 1003 Form, which Defendant executed and signed.

30.     On the Uniform Residential Loan Application, Defendant certified the accuracy of the information contained therein including but not limited to financial condition of Defendant and consented to the verification and re-verification of the information contained therein.

31.     Among the information provided and certified by Defendant in his Uniform Residential Loan Application, Defendant was required to certify information regarding his current employer, statements of his gross monthly income, and to certify that his intended to use the loan proceeds to purchase real property which Defendant intended to use as his primary residence.

32.     In furtherance of his effort, because Defendant knew that his then current income was insufficient to support the approval of the loan and/or in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant:

a)     Provided, prepared, caused to be prepared, false loan applications, which misstated his employment, income and/or intended use of the property as a primary residence;

b).     Certified a false loan application, which misstated his employment income and/or intended use of the property as a primary residence; and

c).     Caused his agents to submit to lenders a false loan application and other loan related documents

33.     The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in, and in conjunction with, his loan applications was

false, and in reliance on the information and documentation provided by Defendant to the lender therein approved the loan.

34.     Defendant executed a promissory note in favor of his initial lender, its successors, transferees, and assigns. In the loan application Defendant expressly represented to the original lender and to its successor in interest the accuracy of the information.

35.     The proceeds of the loan, as referenced in the promissory note, were to be used by Defendant in the purchase or refinance of the property described therein.  In exchange, Defendant agreed and promised to pay according to the mutually agreed upon terms and conditions more particularly described in the promissory notes.

36.     Lender fully performed, and Defendant acquired title to the property. The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

37.     Defendant has defaulted on his  obligations to pay and to re-verify the information contained in the Uniform Residential Loan Application. Despite Plaintiff's attempts to secure information from Defendant to re-verify the information contained in his loan application, Defendant has failed and/or refused to comply with Plaintiff's requests.

38.     Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

39.     By reason of the foregoing, Defendant obtained money by using a statement in writing that falsely represented Defendant's financial condition on which the lender relied on. Defendant submitted the loan application with the intent to deceive the lender. Defendant, therefore, had a specific intent to defraud his lender.

40.     Defendant's actions constitute material misrepresentations of the facts. Defendant intended for his ender to rely on those misrepresentations. Lender did rely upon Defendant's misrepresentations of repayment and was induced to lend money to Defendant by those misrepresentations. Lender reasonably relied on Defendant's misrepresentations.

41.     As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $74,813.70 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(B), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $74,813.70 plus interest and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1.     A monetary judgment against Defendant in the amount of $74,813.70, plus accrued interest at the contractual rate, plus, additional interest at the contractual rate, which will continue to accrue until the date of judgment herein;

2.     An order determining that such debt is non-dischargeable under 11 USC § 523(a)(2)(A) and (B);

3.     An order awarding Plaintiff its attorneys' fees and costs incurred herein; and

4.     An order awarding Plaintiff such additional relief as this Court deems just and equitable.

Dated: December 8, 2010                    **Respectfully Submitted,**

                                           **LAW OFFICES OF JUSTIN T. RYAN**

                                           By: /S/ JUSTIN T. RYAN                    .
                                                Justin T. Ryan
                                                Attorney for Plaintiff
                                                Heritage Pacific Financial, LLC. dba
                                                Heritage Pacific Financial

---

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Richard J. Wilson_ _____    _____
Borrower                                         Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA ☐   Conventional ☒   Other ☐ <br> FHA ☐   USDA/Rural Housing Service ☐ | Agency Case Number | Lender Case Number <br> 0000011542 |
|---|---|---|---|

| Amount <br> $ 75000 00 | Interest Rate <br> 12 0000 % | No. of Months <br> 240/240 | Amortization Type: | Fixed ☐   Other (explain) ☐ <br> GPM ☐   ARM (type): ☒ |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & zip code) <br> 24813 NORTH 43RD DRIVE  GLENDALE, AZ 85310 | No. of Units <br> 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) <br> LOT 111, UPLAND HILLS, ACCORDING TO BOOK 331 OF MAPS, PAGE 29 AND AFFIDAVIT OF CORRECTION | Year Built <br> 1991 |
|---|---|

| Purpose of Loan | Purchase ☐   Construction ☐   Other (explain) ☐ <br> Refinance ☒   Construction-Permanent ☐ | Property will be: <br> Primary Residence ☒   Secondary Residence ☐   Investment ☐ |
|---|---|---|

**Complete this line if construction or construction-permanent loan**

| Year Lot Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | (a) Present Value of Lot <br> $ | (b) Cost of Improvements <br> $ | Total (a + b) <br> $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan**

| Year Acquired <br> 2000 | Original Cost <br> $ 190000 00 | Amount Existing Liens <br> $ 425000 00 | Purpose of Refinance <br> CASHOUT | Describe Improvements ☐ made ☐ to be made <br> Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) <br> RICHARD J. WILSON | Manner in which Title will be held <br> A MARRIED MAN, AS HIS SOLE AND | Estate will be held in: <br> Fee Simple ☒ <br> Leasehold ☐ (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

|  | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) <br> RICHARD J. WILSON | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number <br> ███5011 | Home Phone (incl. area code) | DOB (MM/DD/YYYY) <br> █████1952 | Yrs. School <br> 14 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| Married ☒   Unmarried (include single, divorced, widowed) ☐ <br> Separated ☐ | | Dependents (not listed by Co-Borrower) <br> no. 2   ages 15, 17 | | Married ☐   Unmarried (include single, divorced, widowed) ☐ <br> Separated ☐ | | Dependents (not listed by Borrower) <br> no. 0   ages | |

| Present Address (street, city, state, zip code) ☒ Own ☐ Rent  5 No. Yrs <br> 24813 NORTH 43RD DRIVE  GLENDALE, AZ 85310 | Present Address (street, city, state, zip code) ☐ Own ☐ Rent  0 No. Yrs |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following**

| Former Address (street, city, state, zip code) ☐ Own ☐ Rent  No. Yrs | Former Address (street, city, state, zip code) ☐ Own ☐ Rent  No. Yrs |
|---|---|

## IV. EMPLOYMENT INFORMATION

|  | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer  Self Employed ☐ <br> WEST USA REALTY <br> 16150 N ARROWHEAD FOUNTAIN CENTER <br> PEORIA AZ, 85382 | Yrs. on this job <br> 2 3 <br> Yrs. employed in this line of work/profession <br> 4 00 | Name & Address of Employer  Self Employed ☐ | Yrs. on this job <br> 0 <br> Yrs. employed in this line of work/profession |
|---|---|---|---|
| Position/Title/Type of Business <br> REALTOR | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following**

UPFRONT

EXHIBIT A

| Borrower | | | | | Co-Borrower | |
|---|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
| | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone(incl. area code) | | Position/Title/Type of Business | | Business Phone(incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
| | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone(incl. area code) | | Position/Title/Type of Business | | Business Phone(incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 15000.00 | $ | $ 15000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2546.00 | 2546.00 |
| Bonuses | | | | Other Financing(P&I) | | 750.00 |
| Commissions | | | | Hazard Insurance | 50.00 | 50.00 |
| Dividends / Interest | | | | Real Estate Taxes | 148.66 | 148.67 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| **Total** | $ 15000.00 | $ | $ 15000.00 | **Total** | $ 2744.66 | 3494.67 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.
Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the
Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| List checking and savings accounts below | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| BANK OF AMERICA | | New Century | | |
| PO Box 34893 | | Condo 1st | | |
| Seattle WA 98124-1893 | | | | |
| Acct. no. ████891 $ 13118.00 | | Acct. no. ████0439 | 1060.00 | 163999.00 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company NEW CENTURY MORTAGE (2ND) | $ Payment/Months | $ |
| Acct. no. $ | | Acct. no. ████1250 | 362.00 | 40846.00 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company WFS FINANCIAL | $ Payment/Months | $ |
| Acct. no. $ | | Acct. no. ████9208 | 484.00 | 24802.00 |

| Name and address of Bank, S&L or Credit Union | | Name and address of Company | $ Payment/Months | $ |
|---|---|---|---|---|
| | | WASH MTL | | |
| Acct. no | $ | Acct. no ████4741 | 216.00 | 6146 00 |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company<br>CAP ONE BK | $ Payment/Months | $ |
| | | Acct. no ████0211 | 178.00 | 5942 00 |
| Life insurance net cash value<br>Face amount $ | $ | Name and address of Company<br>WASH MUTUAL | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ 13118.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1007000 00 | | | |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no ████9426 | 151 00 | 4309 00 |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 1514.00 | |
| Total Assets a | $ 1020118.00 | Net Worth (a minus b) | $ 977859 00 | Total Liabilities b | $ 42259 00 |

Schedule of Real Estate Owned (If additional properties are owned use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance Maintenance Taxes & Misc | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 24813 NORTH 43RD DRIVE<br>GLENDALE, AZ 85310 | SFR | $ 500000 00 | 425000 00 | $ | 2548 80 | 198 66 | $ |
| 2140 W MISSION WAY<br>PRESCOTT, AZ 86301 | R CONDO | 250000 00 | 205000 00 | 1500 00 | 1422.00 | | ( 297 00) |
| 8100 W HEARN<br>GLENDALE, AZ 85308 | R SFR | 257000 00 | 153898 00 | 1200 00 | 1223 00 | | ( 323 00) |
| Totals | | $ 1007000 00 | 783898 00 | 2700 00 | 5191 00 | 198 66 | ( 620 00) |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s)

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| a Purchase price | $ | If you answer "yes" to any questions a through i, please use continuation sheet for explanation | Borrower | | Co Borrower | |
| | | | Yes No | | Yes No | |
| b. Alterations, improvements, repairs | | a Are there any outstanding judgments against you? | [X] | | [ ] [ ] | |
| c Land (if acquired separately) | | b Have you been declared bankrupt within the past 7 years? | [X] | | [ ] [ ] | |
| d Refinance (incl. debts to be paid off) | | c Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | [X] | | [ ] [ ] | |
| e Estimated prepaid items | | d Are you a party to a lawsuit? | [X] | | [ ] [ ] | |
| f Estimated closing costs | 3274.00 | e Have you directly or indirectly been obligated on any loan which resulted in foreclosure or judgement? | [X] | | [ ] [ ] | |
| g PMI, MIP, Funding Fee | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans educational loans, manufactured (mobile) home loans, any mortgage financial obligation bond or loan guarantee. If "Yes", provide details including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| h Discount (if Borrower will pay) | | | | | | |
| i Total costs (add items a through h) | 3274.00 | | | | | |

## VII. DETAILS OF TRANSACTION | VIII. DECLARATIONS

| | | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| | | If you answer "yes" to any questions a through i, please use continuation sheet for explanation | | Yes | No | Yes | No |
| j | Subordinate financing | | | | | | |
| k | Borrower's closing costs paid by Seller | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes", give details as described in the preceding question | | | X | | |
| l | Other Credits (explain) | g. Are you obligated to pay alimony, child support or separate maintenance? | | | X | | |
| | | h. Is any part of the down payment borrowed? | | | X | | |
| | | i. Are you a co-maker or endorser on a note? | | | X | | |
| m | Loan amount (exclude PMI, MIP Funding Fee financed) | 75000.00 | j. Are you a citizen? | | X | | | |
| | | k. Are you a permanent resident alien? | | | X | | |
| n | PMI, MIP Funding Fee financed | l. Do you intend to occupy the property as your primary residence? If "yes" complete question m below | | X | | | |
| o | Loan amount (add m & n) | 75000.00 | m. Have you had an ownership interest in a property in the last three years? | | X | | | |
| p | Cash from/to Borrower (subtract j, k, l & o from i) | ( 71726.00) | (1) What type of property did you own – principal residence (PR), second home (SH) or investment property (IP)? | | PR | | | |
| | | | (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | SP | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq., (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application, (3) the property will not be used for any illegal or prohibited purpose or use, (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan, (5) the property will be occupied as indicated in this application, (6) the Lender, its servicers, successors or assigns may retain the original and/or electronic record of this application whether or not the Loan is approved, (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan, (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies, (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law, (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property, and (11) my transmission of this application as an "electronic record" containing my "electronic signature" as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), facsimile transmission of this application containing a facsimile of my signature shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 2-24-06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSE.

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | [ ] I do not wish to furnish this information | CO-BORROWER | | [ ] I do not wish to furnish this information |
|---|---|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino | [X] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino | [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native [ ] Native Hawaiian or Pacific Islander | [ ] Asian [X] White [ ] Black or African American | Race: | [ ] American Indian or Alaska Native [ ] Native Hawaiian or Pacific Islander | [ ] Asian [ ] White [ ] Black or African American |
| Sex: | [ ] Female | [X] Male | Sex: | [ ] Female | [ ] Male |

| To be Completed by Interviewer: This application was taken by: | Interviewer's Name (print or type) WAYNE TURNER | | Name and Address of Interviewer's Employer SECURITY MORTGAGE CORPORATION |
|---|---|---|---|
| [ ] Face-to-face interview | Interviewer's Signature | Date | |
| [ ] Mail | Wayne Turner | 1-7-06 | 4505 E CHANDLER BLVD. 135 |
| [X] Telephone | Interviewer's Phone Number (incl. area code) | | PHOENIX, AZ 85048 |
| [ ] Internet | | | |

## Continuation Sheet / Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower RICHARD J WILSON | Agency Case Number |
|---|---|---|
| | Co-Borrower | Lender Case Number 0000011542 |

### Additional Liabilities

| Name and address of Company | Monthly Payment | Mos Left To Pay |
|---|---|---|
| **GEMB/JCP** | $ 21.00 | |
| | Unpaid Balance | |
| | $ 865.00 | |
| Liability Type **CREDITOR** | Acct. no ████457 | |

### Additional Liabilities

| Name and address of Company | Monthly Payment | Mos Left To Pay |
|---|---|---|
| **HSBC AUTO** | $ 447.00 | |
| | Unpaid Balance | |
| | $ 168.00 | |
| Liability Type **CREDITOR** | Acct. no ████0009 | |

### Additional Liabilities

| Name and address of Company | Monthly Payment | Mos Left To Pay |
|---|---|---|
| **Homecomings Financial** | $ 2546.00 | |
| | Unpaid Balance | |
| | $ 424998.00 | |
| Liability Type **CREDITOR** | Acct no | |

### Additional Liabilities

| Name and address of Company | Monthly Payment | Mos Left To Pay |
|---|---|---|
| **Select Portfolio SVCin** 6100 W Hearn | $ 1223.00 | |
| | Unpaid Balance | |
| | $ 153898.00 | |
| Liability Type **CREDITOR** | Acct. no ████3320 | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment or both to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _(signature)_ | 2-24-06 | X | |

# Continuation Sheet / Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower RICHARD J WILSON | Agency Case Number |
|---|---|---|
| | Co-Borrower | Lender Case Number 0000011542 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001 et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 7-29-06 | X | |

# HOME EQUITY LINE OF CREDIT AGREEMENT
# AND DISCLOSURE STATEMENT

**Property Serving as Security (the "Property"):** 24813 NORTH 43RD DRIVE, GLENDALE, ARIZONA 85310

**Borrower's Name and Address:** RICHARD J. WILSON, 24813 NORTH 43RD DRIVE, GLENDALE, ARIZONA 85310
**Lender's Name and Address:** WESTERN RESIDENTIAL MORTGAGE INC., A CORPORATION, 300 CLARENDON AVE. STE 475, PHOENIX, ARIZONA 85013

**Date:** MARCH 15, 2006
**Credit Limit:** $ 75,000.00
**Initial Advance:** $ 75,000.00
**Minimum Advance:** $ 100.00
**Minimum Balance:** $ N/A

**Loan Number:** ████████1542
**Draw Period:** 120 Mos.
**Repayment Period:** 120 Mos.
**Maturity Date:** MAY 1, 2026
**Billing Cycle:** MONTHLY

**Lien Priority:** Junior Lien
**ANNUAL PERCENTAGE RATE:** 12.0000
**Margin:** 4.500
**Max. Interest Rate:** 18.0000
**Fees and Finance Charges:** See Page 6

1. **Home Equity Line of Credit Agreement.** This Home Equity Line of Credit Agreement ("Agreement") governs your Home Equity Line of Credit Account ("Account") with the lender named above ("Lender"). Your Account is a credit arrangement in which we make loans to you by advancing funds ("Advances") at your direction, allowing you to repay those Advances and take additional Advances, subject to the terms of this Agreement. This Agreement will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount equal to or less than zero.

   In this Agreement, the terms "we," "us," and "our" refer to the Lender or to any subsequent assignee or transferee. Except as noted below, the terms "you," "your," and "yours" refer to each person that signs this Agreement or has authority to use the Account. Read this Agreement carefully so that you know how your Account works and keep a copy of this Agreement for your records.
2. **Terms And Definitions.** The following terms are defined as set forth in this Section. Other terms are defined elsewhere in this Agreement.
   A. **"Account Balance"** is the total unpaid principal of Advances made under the Account, plus unpaid FINANCE CHARGES, outstanding fees, charges, costs, and credit insurance premiums.
   B. **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
   C. **"Billing Cycle"** is an interval of time that occurs regularly during the term of this Agreement and is used to determine the FINANCE CHARGES and other fees, charges, and credit insurance premiums that are due on your Account. The number of days in each Billing Cycle may vary from time to time. A Billing Cycle occurs regardless of whether there is a balance or any activity on your Account. Your Billing Cycle is stated on page 1 of this Agreement. However, the first Billing Cycle may be shorter.
   D. **"Billing Statement"** is a statement that we will furnish to you periodically that provides important information regarding your Account activity.
   E. **"Credit Limit"** is the maximum aggregate amount of Advances that we will extend to you under this Agreement. Your Credit Limit may change under certain circumstances. Your initial Credit Limit is stated on page 1.
   F. **"Draw Period"** is the period of time during which you may request Advances from your Account. The Draw Period is stated on page 1.
   G. **"Initial Advance"** is the minimum amount of the first Advance you must request and accept from your Account. The amount of your Initial Advance is stated on page 1.
   H. **"Maturity Date"** is the date on which the entire Account Balance under this Agreement is due. The Maturity Date of your Account is stated on page 1.
   I. **"Minimum Advance"** is the least amount of money you may request at any one time from your Account. Your Minimum Advance is stated on page 1.
   J. **"Minimum Balance"** is the minimum outstanding principal balance that you must maintain under your Account during the Draw Period once the Initial Advance is taken. Your Minimum Balance is stated on page 1.
   K. **"Minimum Payment"** is the minimum amount you must pay on your Credit Account, as reflected on each periodic Billing Statement for each Billing Cycle.
   L. **"Repayment Period"** is the period of time that begins at the end of the Draw Period. During any Repayment Period, you may no longer request Advances from your Account. The Repayment Period, if any, is stated on page 1.
3. **Borrower's Promise to Pay.** During the Draw Period and any Repayment Period, you will be required to make Minimum Payments in accordance with the terms of this Agreement and Security Instrument. We will send you Billing Statements describing your Account activity and your minimum payment due (the **"Minimum Payment"**). You will receive a Billing Statement approximately every 30 days. Payments will be due as shown on the Billing Statements. You may repay all or any part of your Account Balance, at any time, without penalty, subject to the limitations of this Agreement. If you fail to make your Minimum Payment, we may enforce our rights and remedies under Section 14 and elsewhere in this Agreement and Security Instrument. You must pay the entire outstanding Account Balance on or before the Maturity Date stated on page 1.
4. **Security.** All amounts due under the Account are secured by a mortgage, deed of trust, or security deed ("Security Instrument") on the Property. Borrower agrees to pay all amounts due, and perform all covenants and obligations required of Borrower under the Security Instrument. If it becomes necessary for us to advance funds to you above the Credit Limit to protect our security interest, those amounts in excess of the Credit Limit will be owed by you and will be secured by the Security Instrument unless Applicable Law prohibits the same. The Security Instrument and this Agreement are related documents and a default under either document will be treated as a default under both documents. To the extent permitted by Applicable Law, the lien of the Security Instrument will continue and will have the same priority if, with your consent, we renew, extend, amend, modify or substitute this Agreement. In such event, you agree to execute any additional documents necessary to achieve the action being taken.
5. **Advances.** We are not obligated to advance any funds to you under this Agreement until: (a) the Security Instrument: (i) has been reviewed by us for accuracy and completeness, (ii) has been recorded in the appropriate land records of the jurisdiction in which the Property is located, and (iii) constitutes a valid lien on the

DocMagic *eFORMS* 800-649-1362
www.docmagic.com

Usheag1.twg.1.tem



EXHIBIT
B

Property with no other encumbrances on the Property other than those specifically agreed to by us in writing; and (b)  any applicable right of rescission has expired without exercise of that right.  During the Draw Period, you may request Advances from your Account by using a preprinted check that will be provided to you, and any amounts you repay will subsequently be available for Advances,  subject to the limitations of this Agreement.  If there is more than one of you, each of you may obtain Advances in accordance with the terms of this Agreement.  Each of you is individually responsible for payment of the entire Account Balance regardless of who actually requested the Advance.

Please note that in the event that the Lender's interest in the Borrower's home equity line of credit is sold, assigned or transferred to another party (an "assignee"), the Borrower will not be able to pay down or draw on the credit line until the servicing of the equity line of credit is transferred to such assignee or its designee.  The procedures for payment and borrowing additional funds under the home equity line of credit may be modified by written notice to the Borrower from the assignee.  The Lender or its designee will notify the Borrower by mail if the Lender's interest in the home equity line of credit is sold, assigned or transferred.

The amount of your first Advance must be at least equal to the Initial  Advance, but not more than your Credit Limit.  You may not receive the Initial Advance until after (a) the three day rescission period prescribed by federal law has elapsed; (b) we are reasonably satisfied that no person has rescinded the Agreement; and (c) we are satisfied the Security Instrument constitutes an accurate and valid lien on  the Property.  However, if the Initial Advance is used to pay for a portion of the purchase price of the Property identified on page 1, the three-day rescission period will not apply to that Initial Advance, but any subsequent Advances will not be made until the three-day rescission period has elapsed.

If you request an Advance that is less than the Minimum Advance, we may, at our option, pay the Advance.  If we do pay such Advance, this does not constitute a reduction of the Minimum Advance provisions of this Agreement.

Following the Draw Period, there may be a Repayment Period during which you must make Minimum Payments as stated below.  You may not obtain Advances during any Repayment Period.  However, during both the Draw Period and any Repayment Period we may, at our option, make Advances from your Account to pay fees, charges, costs, or credit insurance premiums due under this Agreement or the Security Instrument or make other Advances as allowed by the Security Instrument, and all of these Advances will be added to the Account Balance, bear interest from the date of disbursement, subject to Applicable Law, and be subject to all  of the terms of this Agreement and the Security Instrument.

6.    **Credit Limit; Minimum Balance.**  Your initial Credit Limit is stated on page 1.  You may not request an Advance from your Account that would  cause your outstanding balance of Advances to exceed your Credit Limit.  We are not obligated to pay any Advance request that would cause your outstanding balance of Advances to exceed your Credit Limit.  If we do make  an Advance that causes your outstanding balance of Advances to exceed your Credit Limit, this will not constitute an increase in your Credit Limit.  You agree to pay the Overlimit Fee stated on page 6 for each Advance that causes the outstanding Account Balance to exceed your Credit Limit.  You agree to repay immediately any amounts that exceed your Credit Limit.

7.    **Minimum Payment Calculation.**  During the Draw Period, your Minimum Payment will equal the total of (a) the periodic finance charges, and other fees, charges and costs, including without limitation, any other expenses or advances incurred by us under the Security Instrument; (b) accrued but unpaid interest for prior Billing Cycles; (c) and premiums for any optional credit life insurance.  During the Repayment Period, if any, your minimum payment will equal 1/ 1 2 0       th of your unpaid Account Balance at the end of the Draw Period, plus all periodic finance charges and other fees, charges and costs.  If there is no Repayment Period, you will be required to pay your entire outstanding balance at the end of the Draw Period.

Unless your Account is terminated and we require immediate payment of the entire outstanding balance as provided in Section 14, you must pay at least the Minimum Payment for each Billing Cycle by the payment due date shown on the periodic statement.  The minimum payments may not be sufficient to fully repay the principal that is outstanding on your line.  If they are not, you will be required to pay the entire outstanding balance in a single payment.

8.    **Application of Payments.**  We may apply all payments and credits in accordance with our standard operating procedures and with the requirements of Applicable Law.  Any application of payments, insurance proceeds, or  Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date or change the amount of the Periodic Payments.

9.    **Annual Percentage Rate.**

   A.    **Initial Rate.**  The initial ANNUAL PERCENTAGE RATE under this Agreement is                 1 2 . 0 0 0 0 % (Daily Periodic Rate of   0 . 0 3 2 8 8    %).  This initial rate is equal to the Index plus Margin, described in paragraph B of this Section.  The ANNUAL PERCENTAGE RATE does not include costs other than interest.  The ANNUAL PERCENTAGE RATE and corresponding Daily Periodic Rate are variable rates and therefore may increase or decrease on the first day of each billing cycle based on the changes in the Index.

   ☐    **"Discounted" Initial Rate.**  If this box is checked,  the initial ANNUAL PERCENTAGE RATE listed in paragraph A of this Section is "discounted," and this rate will be in effect for a period of             days from the date of this Agreement.  Thereafter, the  ANNUAL PERCENTAGE RATE (and the related Daily Periodic Rate) will be determined as set forth in paragraph B in this Section.  The Initial Rate is not equal to the sum of the Index and Margin.  Without the discount, the initial ANNUAL PERCENTAGE RATE under this Agreement would be                 %.  (Daily Periodic Rate of                %).

   B.    **Rate Computation.**  The ANNUAL PERCENTAGE RATE under this Agreement is based upon the sum  of the Index plus the Margin, rounded to the nearest one-eighth of one percentage point (0.125%).  The  ANNUAL PERCENTAGE RATE may increase or decrease based upon changes in the Index, and such changes will affect your Minimum Payment and periodic FINANCE CHARGES.  The Daily Periodic Rate under this Agreement will always be equal to the ANNUAL PERCENTAGE RATE that is then in effect, divided by 365 (or 366 in a leap year).  The ANNUAL PERCENTAGE RATE does not include costs other than interest.  The "Index" is Prime Rate as published in *The Wall Street Journal* "Money  Rates" table.  The "Margin" is        4 . 5 0 0   %.

   If the Index is no longer available, we will use a substitute Index (and, if necessary, a new Margin).  The substitute Index will have a historical movement substantially similar to the Index, and the substitute Index and Margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the Index becomes unavailable.

   C.    **Adjustments.**  The ANNUAL PERCENTAGE RATE may be adjusted on the first day of each billing cycle (each, a  "Change Date").  Except as stated below, on each Change Date the ANNUAL PERCENTAGE RATE will be determined by adding the Margin to the value of the Index on the last  publication date of the prior month.  Each change in the ANNUAL PERCENTAGE RATE (and the related Daily Periodic Rate) will take effect without prior notice and will apply to both new Advances and your Account Balance.

   D.    **Limits.**  There is no limit to the amount by which the ANNUAL PERCENTAGE RATE can increase or decrease on any  change date or in any 1-year period.  The maximum ANNUAL PERCENTAGE RATE that can be imposed is the lesser of (a)        1 8 . 0 0 0 0  % or (b) the maximum rate permitted by Applicable Law.

10.  **Finance Charges.**  You agree to pay all FINANCE CHARGES that accrue on your Account.  You will have to pay both periodic FINANCE CHARGES and other FINANCE CHARGES in connection with your Account.  Periodic  FINANCE CHARGES begin to accrue on the day that there is an unpaid balance due on

*DocMagic* ☎ 800-649-1362
www.docmagic.com

Usheag2.twg.2.tem

your Account and will continue to accrue until the Account Balance is paid in full. There is no grace period that will allow you to avoid the assessment of periodic FINANCE CHARGES on your Account.

The total periodic FINANCE CHARGE for each Billing Cycle will be calculated by first multiplying the Daily Balance (as described below) for each day of the billing cycle by the Daily Periodic Rate that is in effect for that day. This provides the periodic FINANCE CHARGE for each day of the Billing Cycle. The periodic FINANCE CHARGE for each day of the Billing Cycle will be added together to get the total periodic FINANCE CHARGE for the Billing Cycle. The other FINANCE CHARGES that you will have to pay in connection with your Account are listed on page 6 under "Additional  CLOSING COSTS."

To calculate the "Daily Balance" for each day of the Billing Cycle, (i) we start with the beginning Account Balance of your Account that day, (ii) exclude any unpaid finance charges or other charges provided for under this Agreement, (iii) add any new Advances posted to the Account, and (iv) then we subtract any payments or credits applied to your Account Balance. If you have a positive balance in your Account  on any day, we will not pay any interest on the positive balance and the positive balance will not be treated as a daily balance in the calculation of periodic finance charges.

**11.  Finance Charges, Fees, Other Charges, and Costs.** You agree to pay the Finance Charges, fees and other charges listed on page 6 if the circumstances triggering their assessment apply. These fees and charges will be added  to the Account Balance and are payable as set forth in this Agreement. Subject to any limitations of Applicable Law, you agree to pay all reasonable costs we incur to collect the Account Balance including, without limitation, court costs, attorney's fees, and foreclosure-related expenses, if you default under this Agreement or become involved in any bankruptcy action. Should any loan charge exceed the maximum allowable charge, (a) such charge shall be reduced by the amount necessary to reduce the charge to the maximum allowable charge; and (b) any sums already collected from you shall be refunded to you.

**12.  Refund of Fees, Charges, and Costs.** The terms of this Agreement shall be construed to be consistent with Applicable Law. However, if a court of competent jurisdiction or other qualified authority determines that the  loan charges and fees described in this Agreement exceed the limits that Applicable Law allows, then the following shall occur. First, any such purportedly excessive charges or fees shall be reduced to the permitted amount. Second, any amounts collected that exceed the permitted amount will be returned to you, either by direct payment or by reducing the principal you owe on your Account. Your receipt of a refund made by direct payment to you or credited to your Account will constitute a waiver of any right of action you may have arising out of overcharges or allegedly excessive loan charges or fees.

**13.  Property Insurance.** You agree to obtain property insurance against loss or damage to the Property, in the amounts, for the time periods and  against the risks that the Security Instrument and/or we require. You agree to provide (i) standard property insurance for  the Property in an amount equal to the replacement cost of the property and (ii) if we notify you that the Property is located in a flood zone, flood insurance in an amount equal to the lesser of the Credit Limit or the maximum amount available pursuant to the National Flood Insurance program (if we notify you after the date of this Agreement, you  agree to obtain such insurance within 45 days of being notified). You agree to provide us with a mortgagee endorsement on origination and at each renewal of such insurance coverage.

You may obtain the insurance from an insurance carrier of your choice, so long as the insurance carrier is acceptable to us. If you fail to purchase and maintain acceptable property insurance, we may purchase insurance for you on your behalf and at your expense as described in Section 5 of the Security Instrument. We have no obligation to obtain such insurance. Should we take this action, the equity in the Property and contents thereof may not be protected as you  desire. Further, the cost of the insurance may significantly exceed the cost of  such insurance that you could have obtained, this cost will be treated as an Advance and will be subject to a FINANCE CHARGE.

**14.  Additional Rights and Remedies.** In addition to the rights described elsewhere in this  Agreement and in the Security Instrument, we also have the following rights:

A.    **We can terminate your Account and require you to pay us the entire outstanding Account Balance under this Agreement in one payment, and charge you certain fees, if any of the following occur:** 1) You engage in fraud or make a material misrepresentation at any time in connection  with your Account; 2) We do not receive the full amount of any Minimum Payment due or you fail to meet any of the other repayment terms of this Agreement; 3) Your action or inaction adversely affects the Property or our rights in it (for this purpose, the words "you," "your," and "yours" also refer to the owner of the Property, if different than you). Examples of these actions or inactions include, but are not limited to: a) Your death, if you are the sole borrower on the Account; or the death of all but one borrower which adversely affects our security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) You transfer all or part of your interest in the Property without our written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f) Failure to maintain required insurance on the Property; g) Waste or destructive use of the Property which adversely affects our security; h) Failure to pay taxes or assessments on the Property; i) Permitting the creation of a senior lien on the Property; j) Filing of a judgment against you,  if the amount of the judgment and collateral subject to the judgment is such that our security is adversely affected.

We may, at our option, take lesser action than those described in this Section. Such lesser action may include, without limitation, suspending your Account and not allowing you to obtain any further Advances, reducing your Credit Limit, and/or changing the payment terms on your Account. If  we take any such action, this shall not constitute an election of remedies or a waiver of our right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of this Agreement, the Security Instrument, or at law or in equity. We may take action under this Section only after complying with any notice or cure provisions required under Applicable Law. In the event we elect not to terminate the Account or take any lesser action  as provided in this Section, we do not forfeit or waive our right to do so at a later time if any of the circumstances described above exists at that time.

B.    **We can refuse to make additional Advances or reduce your Credit Limit during any period of time in which any of the following are in effect:** 1) The value of the Property declines significantly below the value as determined by us at the time you applied for your Account.  This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity in the Property is reduced by fifty percent (50%) or more, and may include a smaller decline depending on individual circumstances; 2) We reasonably believe you will not be able to meet the repayment requirements set forth in this Agreement due to a material change in your financial circumstances; 3) You are in default of a material obligation in this Agreement, including, without limitation, your failing to make a Minimum Payment on a date that it is due; 4) Government action prevents us from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement; 5) Government action impairs our security interest such that the value of our interest is less than 120 percent of your Credit Limit then in effect; 6) A regulatory agency which supervises us has notified us that continued Advances would constitute an unsafe and unsound practice; 7) The maximum ANNUAL PERCENTAGE RATE allowed under this Agreement is reached. If we refuse to make additional Advances or reduce your Credit Limit under this Section, we will send you a written notice stating the reason for such action.  If, for any reason, you believe your ability to obtain Advances or your Credit Limit should be reinstated, you must send us a written request for reinstatement and include in the request the reasons why you believe your ability to obtain Advances or your Credit Limit should be reinstated.

C.    **We can modify or amend the terms of the Agreement.** After you open your Account, we may modify or amend the terms of this Agreement and/or the other loan documents pertaining to the Account if any of the following conditions exist: 1) You consent in writing to our proposed modification or amendment at that time; 2) The modification or amendment unequivocally benefits you throughout the remainder of the term of this Agreement; 3) The modification or amendment results

DocMagic  800-649-1362
www.docmagic.com

Usheag3.twg.3.tem

only in an insignificant change to the terms of this Agreement and/or the other loan documents; 4) The modification or amendment involves the substitution of a new Index and Margin, as provided in Section 9 above. Any Account Balance on the effective date of any modification or amendment is subject to the modification or amendment.

**15. Terminating Your Account.** You may terminate your Account at any time but you may be responsible for an Early Termination Fee described on page 6, if permitted by Applicable Law. To do so, you must notify us in writing. If one of you requests termination of the Account, the Account will be terminated for all of you. At our option, we may release some of you from liability under this Agreement and/or under Applicable Law without releasing all of you.

If your Account is terminated for any reason, you will nonetheless remain obligated to pay the Account Balance immediately upon our demand. Upon termination of your Account by either you or us, you must return to us all Checks or other Account access devices given to you. If either you or we terminate your Account, you will not be entitled to a refund of any FINANCE CHARGES, fees, charges, or credit insurance premiums paid or payable under the Account.

**16. Other Provisions.**

   **A.   Account Checks; Stop Payment Orders.** You may not use the Checks, or otherwise use Advances, to make payments on your Account. You agree that the Checks are our property and that you will return them to us at our request. Checks that you write will not be returned to you.

   We are not responsible if anyone refuses to honor a Check. We may honor postdated Checks and are not responsible if we do so. We will not certify Checks. You agree to notify us immediately by contacting us at the address or telephone number listed on your Billing Statement if there has been, or there may have been, a loss, theft, or unauthorized use of any of the Checks. You may also write to us at the address stated on your Billing Statement. You also agree to cooperate with us or any law enforcement agency in any effort to investigate the circumstances surrounding the incident and efforts to minimize potential losses to you or us stemming from any loss, theft, or unauthorized use of a Check.

   We will honor an oral or written stop payment order for a Check if we have a reasonable opportunity to act on it. We will not be liable for failing to stop payment if we used ordinary care. You agree that we will have no liability to you if any of the information you provide in the oral or written order is incorrect, and we pay the draft. You agree to indemnify us and pay all costs and expenses we incur (including reasonable attorney's fees) as a result of honoring your stop payment order. This indemnity will survive any termination of this Agreement.

   **B.   Tax Consequences.** You acknowledge that we (including our employees and representatives) have given you no assurances, representations or warranties that the FINANCE CHARGES and other fees and charges paid on your Account are tax deductible. You should consult your own tax advisor concerning the deductibility of the FINANCE CHARGES and other fees and charges for the Account.

   **C.   Due On Sale.** The Security Instrument includes the following "due on sale" provision relating to certain sales and transfers of the Property:

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **D.   Negative Amortization.** If your Minimum Payments are not sufficient to cover the FINANCE CHARGE that will accrue on your Account, "negative amortization" will occur. Negative amortization will increase the balance of your Account and reduce the equity in the Property.

   **E.   Review of Your Account.** Upon our request, you will provide us with current financial and credit information and will sign any additional or corrective documents in connection with this Agreement or the Account. You also authorize us to make credit inquiries regarding your ongoing credit worthiness, and to provide information about you to our affiliates and third parties as permitted by Applicable Law.

   **F.   Irregular Payments.** We may accept late payments, partial payments, and items marked "payment in full," even if they are not full payments, without losing any of our rights under this Agreement or under Applicable Law.

   **G.   Delay in Enforcement.** We may delay enforcing our rights under this Agreement without waiving these rights and/or otherwise forfeiting or compromising them.

   **H.   Legal Purposes.** You may not use any Advances for purposes that violate any applicable federal, state, tribal, or local laws, rules, regulations, or ordinances.

   **I.   Assumption.** This Account is not assumable. This means that someone buying the Property may not take this Account as his/her own on the terms of this Agreement or on any other terms.

   **J.   Assignment.** We may transfer this Credit Agreement, the Security Instrument, and any other loan documents relating to the Account to any person or entity without notice to you. You may not transfer or assign your rights or delegate your duties under this Agreement. Subject to the other provisions of this Section, this Agreement is binding on your and our heirs, successors, and personal and legal representatives.

   **K.   Captions and Headings.** The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions of this Agreement.

   **L.   Change of Address, Name or Employment.** You agree to immediately notify us in writing of any change in your name, residence or mailing address, or employment.

   **M.   Governing Law.** Federal law and the law of the jurisdiction in which the Property is located shall govern this Agreement. All rights and obligations contained in this Agreement are subject to any requirements and limitations of Applicable Law.

   **N.   Joint and Several Liability.** Each of you will be legally responsible for payment of the total amount of the Account Balance and fees, charges, costs, and credit insurance premiums regardless of any divorce, legal separation, or other legal proceedings.

   **O.   Severability.** If any portion of this Agreement conflicts with, contradicts or otherwise controverts applicable federal, state, tribal, or local law, then to the extent possible such portion shall be construed as being consistent with such Applicable Law, and further will be deemed changed to the extent necessary to accomplish this end. If any such conflicting or contradicting portion of this Agreement cannot be so construed or changed, it will be deemed severed from this Agreement and will not affect other provisions of this Agreement, which shall be given full effect without regard to the conflicting or contradicting portions.

   **P.   Waiver of Notice.** Subject to Applicable Law, you waive presentment for payment, demand, protest, and notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of nonpayment.

**Q. Sending of Notices.** Except as otherwise provided in this Agreement, all notices must be in writing. Notice to any of you shall be deemed notice to all of you. Any Billing Statement or notice to you under this Agreement will be sufficiently given if sent to your address on file in connection with the Account or to a new address of which you have notified us in writing at least 20 calendar days before the sending of the Billing Statement or notice. Any notice that you give to us must be provided to us at the address listed on page 1, or a different address if you are notified of the same.

**17. YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE.** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**A. Notify Us in Case of Errors or Questions about Your Bill.** If you think your Billing Statement is wrong, or if you need more information about a transaction on your Billing Statement, write us at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first Billing Statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (i) Your name and account number; (ii) The dollar amount of the suspected error.; and (iii) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**B. Our Rights and Our Responsibilities after We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including FINANCE CHARGES, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any FINANCE CHARGES related to the mistaken amount. If we didn't make a mistake, you may have to pay FINANCE CHARGES, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question on your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

# FEES AND FINANCE CHARGES

Subject to limits of Applicable Law, you agree to pay the following fees, charges and closing costs pursuant to this Agreement:

**Late Fees.** On any payment not received within  7   days of the due date, a fee of  5% of the unpaid installment

**Annual Fee.** A fee of $ N/A     during the first monthly billing cycle, and $  N/A     on the anniversary date for
each subsequent year of the draw period.

**Overlimit Fee.** A fee of $ N/A     for each Advance which causes your Account Balance to exceed your Credit Limit.

**Return Payment Fee.** For each check or negotiable instrument we receive in payment for your account, which is returned unpaid for any reason, a fee of
$25.00

**Stop Payment Fee.** A fee of $ N/A     for each stop payment request made on a draft drawn directly on this Account. If I request a stop
payment on any check, I must clearly identify my Account and agree to indemnify and hold the Lender harmless from any and all loss, cost, damage, or expense
(including attorneys' fees) incurred by the Lender as a result of, or in connection with, such request.

**Early Termination Fee.** A fee of  N/A

## ADDITIONAL FINANCE CHARGES AND OTHER CLOSING CHARGES

| ITEM FINANCE CHARGES | AMOUNT | POC | PAID BY |
|---|---|---|---|
| APPLICATION FEE | | | |
| WIRE FEE - TITLE | 80.00 | | Borrower |
| COURIER FEE - TITLE | 15.00 | | Borrower |
| E-MAIL FEE | 60.00 | | Borrower |
| CLOSING/ESCROW FEE | 25.00 | | Borrower |
| PROCESSING FEE | 175.00 | | Borrower |
| UNDERWRITING FEE | 300.00 | | Borrower |
| | 599.00 | | Borrower |
| OTHER CHARGES: | | | |
| LOAN ORIGINATION FEE | 2,000.00 | | Borrower |
| RECORDING FEE | 20.00 | | Borrower |

Subtotal of Estimated Fees and Costs: $ 3,274.00

USHEAG.TWG  12/27/05  ©2005 DOCMAGIC, INC.          Page 6 of 7

DocMagic eFaxes 800-649-1362
www.docmagic.com

Ushmag6.twg.6.tem

You agree to the terms and conditions contained in this Agreement and you acknowledge receipt of a completed copy of this Agreement.

WITNESS: ACCEPTED AND AGREED TO:

_____  3/15/06
Borrower  RICHARD  J.  WILSON          Date

_____          _____
Borrower                          Date      Borrower                          Date

_____          _____
Borrower                          Date      Borrower                          Date

_____          _____
Borrower                          Date      Borrower                          Date

PAY TO THE ORDER OF: HERITAGE PACIFIC FINANCIAL, LLC d/b/a
HERITAGE PACIFIC FINANCIAL

WITHOUT RECOURSE
WESTERN RESIDENTIAL MORTGAGE,
AN ARIZONA CORPORATION, Inc
BY:

LUCI FELTON
FUNDER